IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

LOYCE LAVOID HOWARD, JR.                                                PLAINTIFF

VS.                                                      CIVIL ACTION NO. 5:16-cv-49-FKB

CAROLYN W. COLVIN, COMMISSIONER                                         DEFENDANT
OF SOCIAL SECURITY ADMINISTRATION

_____

MEMORANDUM OPINION AND ORDER

This cause is before the Court regarding the appeal by Loyce Lavoid Howard, Jr., of the Commissioner of Social Security's final decision denying Howard's application for a period of disability and Disability Insurance Benefits ("DIB"). In rendering this Memorandum Opinion and Order, the Court has carefully reviewed the Administrative Record [8] regarding Howard's claims (including the administrative decision, the medical records, and a transcript of the hearing before the Administrative Law Judge ("ALJ")), Appellant's Brief [13], Defendant's Motion to Affirm Commissioner's Decision [14], Memorandum Brief [15], and Plaintiff's Response in Opposition to the Motion to Affirm [19]. The parties have consented to proceed before the undersigned United States Magistrate Judge, and the District Judge has entered an Order of Reference [20]. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

For the reasons discussed in this Memorandum Opinion and Order, the undersigned finds that the Commissioner's decision should be affirmed. Accordingly, the Motion to Affirm [14] is granted.

I. PROCEDURAL HISTORY

Howard filed his application for a period of disability and DIB on April 1, 2013, and

alleged a disability onset date of July 10, 2010, when he was fifty-three years of age. [8] at 15.[1] Howard's earning record demonstrated that he had acquired sufficient quarters of coverage to remain insured through December 31, 2015. *Id.* at 9.

Howard, who completed high school, was born on March 27, 1957. *Id.* at 15, 46. He was fifty-eight years of age on the date he was last insured. *Id.* at 15. From 1996 to his disability onset date of July 10, 2010, Howard worked as a driller in the offshore oil industry at various international locations. *Id.* at 12, 47-48.

In his request for disability, Howard alleged that he is disabled and stopped working due to a grand mal seizure disorder and breakthrough seizures. *Id.* at 135. His initial disability determination described him as being of "advanced age" and stated that Howard alleged disability due to seizures and sleep apnea. *Id.* at 63. In his application, Howard stated that he was six feet tall and weighed two hundred twenty-five pounds. *Id.*

The Social Security Administration denied Howard's application initially and upon reconsideration. *Id.* at 67, 70. Howard requested a hearing, which was held on December 1, 2014, in Hattiesburg, Mississippi. *Id.* at 44. On December 22, 2014, the ALJ issued a decision finding that Howard was not disabled. *Id.* at 9-16. The Appeals Council denied his request for review on April 28, 2016, *id.* at 1, and this appeal followed.

## II. MEDICAL HISTORY

The Court has determined that a detailed recitation of the medical records is not necessary because the parties summarized Howard's records in their briefs, and the ALJ provided thorough summaries in his decision. Nevertheless, a review of the observations and

---

1. Citations reflect the original pagination of the administrative record.

evaluations of certain examiners will aid in the consideration of this case.

The records demonstrate that Howard sought treatment for seizures from Dr. Ruth Fredericks beginning in 2006, and on a consistent basis from 2009 to 2014. *Id.* at 244, 265, 297. During this time period, Howard reported experiencing seizures on May 1, 2006, and July 12, 2010. *Id.* at 244, 262. He also reported an "episode" that occurred on June 28, 2012, in which he woke up, his bed was made, and he was fully dressed, presumably with no memory of those events. *Id.* at 295. Dr. Fredericks treated Howard on an ongoing basis with a combination drugs, and she reported throughout her notes that he had had no seizures, with the exceptions previously noted. In her most recent treatment note dated November 17, 2014, Dr. Fredericks stated that Howard was doing well and that he had had no seizures, although she stated that he was not driving. *Id.* at 297.

In July 2012, Dr. Fredericks referred Howard to Dr. Timothy Cannon, a pulmonologist with Sleep Solutions, located in Jackson, Mississippi, for treatment of sleep apnea. *Id.* at 279-289, 295. After testing, Dr. Cannon diagnosed Howard with severe obstructive sleep apnea. *Id.* at 287. After further sleep studies using a CPAP machine, Dr. Cannon found that Howard had a good response to the CPAP with improvement in his sleep apnea symptoms. *Id.* at 289.

In May 2012, Dr. Fredericks ordered an MRI of Howard's brain with and without contrast. *Id.* at 270. The radiologist's impression was "minimal right frontal sinus disease; otherwise, unremarkable MRI brain without/with gadolinium." *Id.*

### III.  HEARING AND DECISION

In his December 22, 2014, decision, the ALJ evaluated Howard's impairments using the

familiar sequential evaluation process[2] and found that he has the severe impairments of seizure disorder; obstructive sleep apnea, and obesity. *Id.* at 11. The ALJ also considered the combined effect of these impairments and determined that they did not, singly or in combination, meet or medically equal the criteria for any listed impairment. *Id.* at 11-12.

After considering the record, the ALJ found that Howard has the residual functional capacity to "perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to work requiring no exposure to unprotected heights and hazardous machinery. He cannot climb ladders, ropes, or scaffolds. He cannot perform any commercial driving." *Id.* at 12.

The ALJ considered that Howard does his own household chores, mows his own grass,

---

2. In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

(2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

(3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

(4) whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

(5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.920. The analysis ends at the point at which a finding of disability or non-disability is required. The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558,

drives short distances if he cannot get someone to drive him, and does his own grocery shopping. *Id.* at 13-14. The ALJ noted that Howard maintains forty-one acres of land, will occasionally drive a tractor ("bush hog") and plant food plots for deer, and hunt. *Id.* at 13. He also noted that Howard never drives to his doctor's appointments. *Id.*

The ALJ found Howard partially credible, giving credence to his testimony regarding infrequent seizures, and giving some weight to his statements assessing his residual functional capacity. In the ALJ's view, the residual functional capacity compensates for infrequent seizures by restricting his exposure to unprotected heights, hazardous machinery, and commercial driving. *Id.* at 14. The ALJ also considered that Howard's obstructive sleep apnea would restrict his exposure to unprotected heights, hazardous machinery, and commercial driving, as the impairment "may reduce alertness." *Id.* The ALJ also accounted for Howard's obesity by restricting postural activities of climbing ladders, ropes, or scaffolds. *Id.*

The ALJ also addressed handwritten notes in Dr. Frederick's clinic notes which state that Howard "cannot work" secondary to seizures. *Id.*; *see* 260, 295. The ALJ did not "deem these statements as an opinion," finding that "[t]he location of these statements in the notes suggests these are statements of the claimant rather than opinions of the physician." *Id.* at 14. The ALJ further stated, however, that even "[if] they were deemed an opinion," they "would not be given controlling weight because whether a person is 'disabled' or cannot work is reserved to the commissioner," and the opinion was inconsistent with Howard's activities of daily living. *Id.*

In sum, the ALJ found that Howard could not perform his past relevant work as a driller, petroleum, which was medium in exertional demand and skilled (low-end) in character, with a

---

564 (5th Cir. 1995).

specific vocational preparation level of six. *Id.* at 15. However, considering his education level, using the Medical-Vocational Guidelines as a framework for decision-making, and consulting with a vocational expert, the ALJ determined that there were jobs in the national economy that Howard could perform. The ALJ concluded that Howard could perform the jobs of dishwasher; cleaner, industrial setting; and laundry worker, all of which are medium in exertional demand and unskilled in character, with a specific vocational preparation level of two. Accordingly, the ALJ determined that Howard was not disabled from July 10, 2010, through the date of his decision, December 22, 2014. *Id.* at 16.

## IV. STANDARD OF REVIEW

This Court's review is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971), and whether the correct legal standards were applied, 42 U.S.C. § 405(g) (2006). *Accord Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). The Fifth Circuit has defined the "substantial evidence" standard as follows:

> Substantial evidence means more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."

*Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). In applying the substantial evidence standard, the Court must carefully examine the entire record, but must refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.

1995). Hence, if the Commissioner's decision is supported by the evidence, and the proper legal standards were applied, the decision is conclusive and must be upheld by this Court. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994), *overruled on other grounds, Sims v. Apfel,* 530 U.S. 103 (2000).

<u>V. DISCUSSION OF THE ALLEGED ERRORS
AND APPLICABLE LAW</u>

Plaintiff argues that the ALJ's decision is unsupported by substantial evidence and should be reversed for two basic reasons, summarized as follows:

1. The Administrative Law Judge did not give proper weight and consideration to the claimant's treating physician's medical opinions regarding the claimant's restrictions and ability to work.

2. The ALJ failed to properly assess claimant's credibility.

[13] at 3-4.

<u>A. Did the ALJ give proper weight to the opinion of Howard's treating physican?</u>

Plaintiff argues that the ALJ failed to accord the proper weight to the opinion of Dr. Ruth Fredericks, his treating physician. Howard asserts that even if Dr. Fredericks's opinions were not given controlling weight, the ALJ should have afforded them greater weight.

The Fifth Circuit has held that "ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). However, the treating physician's opinions are far from conclusive because the ALJ has the sole responsibility for determining disability status. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994).

Specifically, Howard points to two handwritten notations by Dr. Fredericks, one in a

November 17, 2010, clinic note and another in a July 23, 2012, clinic note, which state "cannot work $2^0$ [to] s[eizures]." [13] at 3; [8] at 260, 295. Having reviewed these notations, the undersigned finds no fault or error in the ALJ's conclusion that they "not [be] deem[ed] . . . as an opinion." Given the location of the notations and lack of elaboration in the clinic notes, these two notations are, at a minimum, ambiguous as to whether they are part of the history given by Howard or an opinion by Dr. Fredericks.[3]

The Court further agrees with the ALJ that even if these notations were intended by Dr. Fredericks to be an opinion, it "would not be given controlling weight" because whether Howard is disabled or "cannot work" is a decision reserved to the Commissioner. [8] at 14. Neither the November 17, 2010, or July 23, 2012, clinic notes contain objective findings that would support a conclusory opinion that Howard "cannot work," and if the two notations were intended to be an opinion, neither of these clinic notes provide any elaboration or explanation for any such alleged opinion. And as the ALJ correctly noted, such an opinion would be "inconsistent with the claimant's *admitted* activities of daily living." *Id.* (emphasis added).

While the ALJ considered Dr. Fredericks's diagnoses and records, the ALJ also pointed to the opinion of a state agency physician who reviewed the record and determined that Howard had no exertional limitations, should avoid hazardous machinery, unprotected heights, and climbing or ladders, ropes, and scaffolds. Accordingly, substantial evidence supports the ALJ's decision, and this argument does not provide the basis for reversal or remand.

---

3. Howard also points to a January 31, 2011, clinic note in which Dr. Fredericks wrote, "cannot operate machinery $2^0$ [to] s[eizures]." The undersigned (and apparently the ALJ) question(s) whether this notation was intended to be an opinion, for the same reasons. Regardless, the ALJ included this limitation in Howard's residual functional capacity (RFC) by including that "he is limited to work requiring no exposure to . . . hazardous machinery." [8] at 12.

### B. Did the ALJ fail to properly assess Howard's credibility?

Plaintiff argues that the ALJ failed to properly assess his credibility. Furthermore, Plaintiff argues that the ALJ failed to give any consideration to his long and consistent work history when evaluating his credibility.

The Court observes that the evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who had an opportunity to observe whether he or she seemed to be disabled. *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988). In the decision, the ALJ fully discussed Howard's symptoms, the infrequency of his seizures, and his activities of daily living. The ALJ observed that Howard's 2006 seizure came on the heels of his missing a dose of his seizure medication. [8] at 13. The ALJ pointed to medical records showing consistent treatment, lack of seizure activity, and observations by his treating physician that he was doing well. In evaluating credibility, the ALJ is not required to give claimant's subjective testimony precedence over conflicting medical evidence. *Anthony v. Sullivan*, 954 F.2d 284, 295 (5th Cir. 1992). Contrary to Plaintiff's argument, the ALJ did consider Howard's long work history, noting that he had worked as a driller since 1996, [8] at 12, but this is one of many factors to be considered regarding credibility. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). In reaching his decision, the ALJ looked at the medical evidence documenting infrequent seizures and Howard's relatively active lifestyle maintaining his house and several acres of land, all while living alone.

In the end, the "claimant must show that he is so functionally impaired by his . . . impairment that he is precluded from engaging in substantial gainful activity." *Taylor*, 706 F.3d at 603. In this case, Howard has failed to do so because the "record reflects that [claimant] was

able to, and did, work for several years while suffering from ailments [he] now asserts are disabling." *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995); *see also Fraga v. Bowen,* 810 F.2d 1296, 1305 & n.11 (5th Cir.1987) (ability to work despite pre-existing condition supports ALJ's finding of not disabled). In sum, remand is not required since there is no evidence in the record that Plaintiff's claims of seizures, sleep apnea, and obesity are severe enough to prevent him from holding substantial gainful employment. *Taylor*, 706 F.3d at 603.

## VI. CONCLUSION

For the reasons discussed in this Memorandum Opinion and Order, the undersigned finds that the ALJ's decision that Howard is not disabled is supported by substantial evidence. Therefore, the undersigned finds that Defendant's Motion to Affirm Commissioner's Decision [14] should be granted, Plaintiff's request for remand should be denied, and this matter should be dismissed with prejudice.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED, this the 15th day of August, 2017.

    /s/ F. Keith Ball  
UNITED STATES MAGISTRATE JUDGE